EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Francisco Beltrán Cintrón y otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios<br><br><br>Abraham Giménez Jorge L. y otros<br><br>Recurridos<br><br>Estado Libre Asociado de Puerto Rico, Departamento de Transportación y Obras Públicas<br><br>Peticionarios | Certiorari<br><br>2020 TSPR 26<br><br>204 DPR ____ |

Número del Caso: AC-2016-110
              Cons. con
              AC-2016-120


Fecha: 6 de marzo de 2020


Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel III


**AC-2016-110**

<u>Oficina del Procurador General</u>:

    Lcdo. Luis R. Román Negrón
    Procurador General

    Lcda. Tanaira Padilla Rodríguez
    Subprocuradora General

    Lcdo. Isaías Sánchez Báez
    Procurador General

Lcdo. Guillermo A. Mangual Amador
Procurador General Auxiliar

Lcda. Carmen A. Riera Cintrón
Procuradora General Auxiliar

Abogada de la parte recurrida:

Lcda. Milagros Acevedo Colón

**AC-2016-120**

Oficina del Procurador General:

Lcda. Margarita Mercado Echegaray
Procuradora General

Lcdo. Luis Román Negrón
Procurador General

Lcdo. Isaías Sánchez Báez
Procurador General

Lcda. Carmen A. Riera Cintrón
Procuradora General Auxiliar

Lcdo. Guillermo A. Mangual Amador
Procurador General Auxiliar

Abogada de la parte recurrida:

Lcda. Ivonne González Morales

Materia: Derecho Administrativo – Jurisdicción primaria exclusiva de la Comisión Apelativa del Servicio Público para atender una controversia relacionada con la validez y alcance de un Reglamento emitido por la antigua Oficina de Personal del Servicio Público.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Francisco Beltrán Cintrón y otros | | *Certiorari* |
| Recurridos | | |
| v. | AC-2016-110 | |
| Estado Libre Asociado de Puerto Rico y otros | Cons. con | |
| Peticionarios | AC-2016-120 | |
| Abraham Giménez Jorge L. y otros | | |
| Recurridos | | |
| Estado Libre Asociado de Puerto Rico, Departamento de Transportación y Obras Públicas | | |
| Peticionarios | | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 6 de marzo de 2020.

Comparece ante nos el Estado Libre Asociado de Puerto Rico, por sí y en representación del Departamento de Transportación y Obras Públicas, la Administración de Rehabilitación Vocacional, la Administración de Instituciones Juveniles, el Departamento de la Familia y varias entidades adscritas a esa agencia,[1] y la Oficina de Recursos Humanos del

---

[1] Tales entidades fueron las siguientes: la Administración para el Sustento de Menores (ASUME), la Administración para el Desarrollo Social y Económico de la Familia (ADSEF), la Administración para el Cuidado y

Estado Libre Asociado de Puerto Rico (en adelante, Estado o agencias codemandadas), mediante los recursos consolidados de epígrafe, y nos solicita que revoquemos dos (2) Sentencias emitidas por el mismo Panel del Tribunal de Apelaciones. Por medio de estas, el foro *a quo* revocó parcialmente dos (2) Sentencias desestimatorias dictadas por dos (2) salas del Tribunal de Primera Instancia, en las que el foro primario concluyó que carecía de jurisdicción sobre la materia para atender la controversia.

Por estar en desacuerdo con parte de la determinación del foro apelativo intermedio, el Estado recurre ante este Tribunal y solicita que dilucidemos si el Tribunal de Apelaciones erró al concluir que el Tribunal de Primera Instancia tiene jurisdicción para evaluar, a través del mecanismo de Sentencia Declaratoria, la validez y alcance de un Reglamento emitido por la antigua Oficina de Personal del Servicio Público (OCAP)[2] o si, *a contrario sensu*, la Comisión Apelativa del Servicio Público (CASP) es el foro con

---

Desarrollo Integral de la Niñez (ACUDEN) y la Administración de Familia y Niños (ADFAN).

[2] La Ley Núm. 184-2004, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público, 3 LPRA ant. secs. 1461-1468p, fue derogada por la Ley Núm. 8-2017, conocida como Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, 3 LPRA sec. 1479 *et seq*. Esta última creó la Oficina de Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico (OATRH), la cual conserva los deberes y facultades de la antigua Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos (OCALARH), foro que, previo a múltiples cambios de ley, fue denominado como la Oficina de Personal del Servicio Público (OCAP). 3 LPRA sec. 1477b.

jurisdicción primaria exclusiva para atender la totalidad de las controversias presentadas en los casos de epígrafe.

Pasemos a delinear los hechos que dieron génesis a la controversia de autos.

I

El 15 de abril de 1986 comenzó a regir en el Gobierno de Puerto Rico el salario mínimo federal.[3] Las controversias presentadas en los recursos consolidados de epígrafe iniciaron varias décadas después, específicamente, el 12 de noviembre de 2009 y el 19 de diciembre de 2013, cuando miles de empleados y exempleados públicos de las agencias codemandadas (en adelante, empleados demandantes), presentaron Demandas sobre Sentencia Declaratoria y Reclamación de Salarios en contra de las agencias codemandadas.[4] En síntesis, los empleados demandantes plantearon que con la entrada en vigor del salario mínimo federal y sus posteriores enmiendas las agencias codemandadas adoptaron el método de ajuste salarial que fue recomendado por la OCAP en el Memorando General Núm. 5-86 de 23 de abril de 1986. Afirmaron que la adopción del método de ajuste salarial dispuesto en el Memorando General Núm. 5-86 tuvo el efecto de crear un sistema paralelo de pago que violó los

---

[3] Véase, Apéndice del recurso AC-2016-0110, pág. 417.
[4] En el caso AC-2016-0110 varios empleados demandantes solicitaron el desistimiento de las reclamaciones presentadas, lo que fue concedido a través de Sentencias Parciales notificadas por el Tribunal de Primera Instancia el 19 de abril de 2013 y el 24 de octubre del mismo año. Véase, Apéndice del recurso AC-2016-0110, págs. 300-303; 305-308 y 312-315.

principios de igual paga por igual trabajo y equidad retributiva debido a que la adopción de ese método de ajuste salarial dejó inoperante el sistema de escalas salariales establecido por la derogada Ley Núm. 89 de 12 de julio de 1979, conocida como Ley de Retribución Uniforme, 3 LPRA ant. secs. 760-760j. Los empleados demandantes argumentaron que tal proceder impidió que recibieran una remuneración a tono con las funciones, responsabilidades y complejidades de sus respectivos puestos de trabajo. Además, arguyeron que fueron privados ilegalmente de sus sueldos, y que el Estado se enriqueció injustamente y violó sus derechos constitucionales al privarles de los niveles de vida y sueldo de los cuales eran acreedores. Más aun, esbozaron que la controversia de autos era una de estricto derecho que surgía de los mismos hechos que fueron estipulados por el Estado en otros casos presentados ante el Tribunal de Primera Instancia en los años 1990, 1991 y 2005, en los que dicho foro decretó la nulidad del método de ajuste salarial establecido en el Memorando General Núm. 5-86. Conforme a ello, adujeron que se encontraban similarmente situados con relación a los empleados que fungieron como demandantes en esos casos, por lo que procedía que se les aplicara el ajuste salarial otorgado a aquellos.

Como parte de los remedios reclamados, los empleados demandantes solicitaron que se decretara la nulidad del Memorando General Núm. 5-86 por constituir un mecanismo

ilegal de ajuste salarial y que se les pagara los salarios y beneficios dejados de percibir; se corrigiera cualquier posible inequidad causada por la falta de implantación de los nuevos planes de retribución establecidos a favor de otros empleados;[5] y que se les asignaran nuevas escalas salariales a tono con el nivel jerárquico y tipo retributivo que correspondiera a cada puesto.

Luego de múltiples trámites procesales, el Estado presentó sendas mociones dispositivas en las que solicitó la desestimación de los pleitos por falta de jurisdicción sobre la materia.[6] Sostuvo que la CASP era el foro administrativo con jurisdicción exclusiva para atender las controversias relacionadas con el principio de mérito y los asuntos de retribución. En vista de que por medio de las reclamaciones de epígrafe los empleados demandantes sostuvieron que las agencias codemandadas implantaron el salario mínimo federal en violación al esquema estatutario y retributivo dispuesto por ley y solicitaron como remedio la corrección de la retribución recibida, el Estado esbozó que no cabía duda de que la CASP era el foro con jurisdicción apelativa exclusiva para atender los reclamos de los empleados demandantes. Así,

---

[5] En ambos recursos, los empleados demandantes adujeron que, luego de que otra sala del Tribunal de Primera Instancia declarara con lugar la *Petición de Sentencia Declaratoria* incoada por otros empleados para impugnar el Memorando General Núm. 5-86, las agencias codemandadas en esos pleitos implantaron planes de retribución acordes con el nivel jerárquico y tipo retributivo del puesto ocupado por cada empleado demandante.

[6] Véase Apéndice del recurso AC-2016-0110, págs. 835-843 y Apéndice del recurso AC-2016-0120, págs. 92-114.

solicitó la desestimación de las reclamaciones de epígrafe, por falta de jurisdicción sobre la materia.

Por su parte, los empleados demandantes presentaron escritos en oposición en los que señalaron que no existía disposición expresa alguna que le otorgara jurisdicción exclusiva a la CASP para atender reclamaciones de empleados públicos presentadas al amparo de la derogada Ley de Retribución Uniforme, *supra*, o su Reglamento.[7] Además, enunciaron que los casos de epígrafe presentaban controversias de estricto derecho, razón por la cual no estaban obligados a agotar remedios administrativos. Por igual, arguyeron que entre sus reclamos se encontraba un planteamiento de índole constitucional apoyado en una presunta violación al principio de igual paga por igual trabajo, lo que hacía innecesario presentar las reclamaciones ante el foro administrativo en primera instancia.

Luego de varios trámites procesales, el Tribunal de Primera Instancia desestimó las Demandas.[8] Razonó que la controversia planteada en los casos de epígrafe estaba relacionada con la clasificación de los puestos de los empleados demandantes y la retribución recibida por estos.

---

[7] Valga señalar que al momento de la presentación de los casos consolidados de epígrafe la Ley de Retribución Uniforme, *supra*, había sido derogada por la Ley Núm. 184-2004, *supra*.

[8] Véase Apéndice del recurso AC-2016-0110, págs. 891-907 y Apéndice del recurso AC-2016-0120, págs. 255-267.

Coligió que, debido a que dichos asuntos formaban parte de los derechos reconocidos a los empleados públicos cobijados por la Ley Núm. 184-2004, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público, 3 LPRA ant. secs. 1461-1468p, y habida cuenta de que las agencias codemandadas eran consideradas Administradores Individuales sujetos a la Ley Núm. 184-2004, *supra*, y al Plan de Reorganización Núm. 2 de 2010, la CASP era el foro con jurisdicción exclusiva para atender los reclamos de los empleados demandantes.[9] En cuanto a los planteamientos relacionados con una presunta violación al derecho constitucional de igual paga por igual trabajo, determinó que los empleados demandantes no incluyeron alegaciones específicas al respecto. En particular, expresó que estos no plantearon la existencia de una inequidad retributiva entre empleados que rendían funciones idénticas, ni esbozaron que la acción administrativa constituía una gestión inútil, inefectiva o que no ofrecía un remedio adecuado. De esta forma, el foro primario desestimó las demandas por falta de jurisdicción sobre la materia.

Oportunamente, los empleados demandantes presentaron mociones de reconsideración ante el foro primario. No

---

[9] Destacamos que en el recurso AC-2016-0110, el Tribunal de Primera Instancia aclaró que, a pesar de que la Demanda en ese caso fue presentada el 12 de noviembre de 2009, previo a la entrada en vigor del Plan Núm. 2 de 2010, este último es aplicable a los hechos del caso, por tratarse de un estatuto procesal de aplicación retroactiva. Véase, Apéndice del recurso AC-2016-0110, pág. 905.

obstante, estas fueron denegadas. Inconformes, estos recurrieron ante el Tribunal de Apelaciones. En resumen, manifestaron que la petición de Sentencia Declaratoria era el mecanismo adecuado para impugnar la validez del Memorando General Núm. 5-86, por lo que el foro primario erró al declararse sin jurisdicción para considerar y resolver las controversias de derecho planteadas.

Luego de varias incidencias procesales,[10] el Tribunal de Apelaciones revocó en parte la determinación del foro primario. En específico, el foro *a quo* determinó que, **aunque el Tribunal de Primera Instancia no tenía jurisdicción para determinar si los empleados demandantes eran acreedores o no en su carácter individual a un ajuste retributivo, por tratarse de asuntos sobre los cuales la CASP tenía jurisdicción primaria exclusiva**, sí podía dilucidar, a través del mecanismo de Sentencia Declaratoria, el alcance y la validez del Memorando General Núm. 5-86, por tratarse de una controversia de derecho que presuntamente afectaba los derechos de los empleados demandantes. De esta forma, entendió que, **debido al número significativo de empleados demandantes afectados,** dicho mecanismo podía proveer certeza

---

[10] Con relación al recurso AC-2016-0110, hacemos la salvedad de que, originalmente, el Tribunal de Apelaciones confirmó el dictamen del foro primario. No obstante, tras una oportuna Moción de Reconsideración presentada por los empleados demandantes, determinó revocar parcialmente el dictamen del Tribunal de Primera Instancia. Véase Apéndice del recurso AC-2016-0110, págs. 1013-1023.

y finalidad a la controversia sobre la validez y el alcance del memorando impugnado.

En desacuerdo, el Estado compareció ante nos por medio de los recursos de epígrafe. En ambos, presentó el siguiente señalamiento de error:

> Incidió el Tribunal de Apelaciones al dejar sin efecto la sentencia desestimatoria emitida por el Tribunal de Primera Instancia y al devolver el caso al foro primario para dilucidar aquella porción de la demanda sobre la validez y alcance del Memorando General 5-86 de la O.C.A.P.

El 27 de enero de 2017, emitimos una Resolución en la que consolidamos, acogimos como *certiorari* y expedimos los recursos de epígrafe. Tras varios trámites procesales,[11] y contando con la comparecencia de ambas partes, nos encontramos en posición de resolver.

## II

### A.

La jurisdicción es el poder o autoridad con el que cuenta un tribunal para considerar y decidir los casos y

---

[11] Ante una Solicitud de Paralización de los Procedimientos presentada por el Estado al amparo del Título III de la Ley Federal "Puerto Rico Oversight, Management, and Economic Stability Act", (Ley PROMESA), el 30 de agosto de 2018, emitimos una Resolución en la que archivamos el caso y decretamos la paralización de los procedimientos hasta tanto se nos certificara el levantamiento de la paralización automática, ya fuera por la conclusión del procedimiento de quiebras o mediante una solicitud a tales efectos, según lo dispuesto en la Sección 362(d) del Código Federal de Quiebras, 11 USCA sec. 362(d). Así las cosas, el 25 de enero de 2019, en atención a una Moción Informativa presentada por el Estado, emitimos una Resolución en la que ordenamos la continuación de los procedimientos, según las condiciones acordadas en las estipulaciones suscritas por las partes, aprobadas por la Jueza Laura Taylor Swain mediante Orden dictada el 9 de noviembre de 2018 en el caso *In re: Commonwealth of Puerto Rico*, Case No. 17 BK 03283-LTS.

controversias ante su consideración. *Alvarado v. Madera Atiles*, 2019 TSPR 91, 202 DPR ____ (2019). En Puerto Rico, los tribunales poseen jurisdicción general, lo que significa que ostentan "autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia". *Rodríguez Rivera v. De León Otano*, 191 DPR 700, 708 (2014). La jurisdicción sobre la materia es la "'capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal'". *Íd.*, citando a J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, [s.l], [Ed. del autor], 2010, pág. 25. Dicha capacidad solo puede ser limitada por el Estado, quien puede otorgar o privar a un tribunal de jurisdicción sobre la materia mediante legislación a esos efectos. *Rodríguez Rivera v. De León* Otano, supra, págs. 708-709.

Reiteradamente, hemos expresado que la ausencia de jurisdicción sobre la materia da lugar a las consecuencias siguientes:

> (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Fuentes Bonilla v. ELA*, 200 DPR 364, 372-373 (2018); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009); *Pagán v. Alcalde*

*Mun. de Cataño*, 143 DPR 314, 326 (1997); *Vázquez v. A.R.P.E.*, 128 DPR 513, 537 (1991).

Por ello, cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar el caso. *Lozada Sánchez v. JCA*, 184 DPR 898, 909 (2012).

**B.**

La doctrina de jurisdicción primaria forma parte de las normas de autolimitación judicial reconocidas en nuestro ordenamiento. *Colón Rivera et al. v. E.L.A.,* 189 DPR 1033, 1057 (2013). Esta doctrina, cuyo origen es jurisprudencial, atiende la interrogante siguiente: ¿cuál foro —el administrativo o el judicial— posee la facultad inicial de adjudicar y entender en el asunto? D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, pág. 562. Así, "[l]a cuestión relativa a la jurisdicción primaria no tiene que ver con el momento o la ocasión de la revisión judicial de la acción administrativa", sino con el foro que atendería el caso en primera instancia. *Íd.*

La jurisdicción primaria consiste en dos vertientes, a saber: la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. La primera vertiente tiene lugar cuando la ley permite que la reclamación se inicie ya sea en la agencia o en el tribunal; la segunda, está presente cuando la propia ley establece que el foro administrativo tendrá

jurisdicción inicial exclusiva para entender en la reclamación. *Rodríguez Rivera v. De León*, 191 DPR 700, 709 (2014).

Ahora bien, hemos aclarado que "la jurisdicción primaria aplica verdaderamente cuando hay jurisdicción concurrente entre el foro administrativo y el judicial". *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 676 (2009). De esta forma, la jurisdicción primaria concurrente presupone que tanto el foro judicial como el administrativo tienen jurisdicción para entender en la controversia planteada, pero se cede la primacía a la agencia por su especialización y conocimiento sobre el asunto objeto de la reclamación. Fernández Quiñones, *op. cit.*, pág. 574. Por consiguiente, "los jueces deben aplicar esta norma de abstención, como regla general, 'en casos en los cuales el peritaje de la agencia sea indispensable para resolver la controversia, ya que los 'tribunales [son] de justicia y no centros académicos para dirimir sutilezas técnicas'". (Corchetes en el original). *Báez Rodríguez v. E.L.A.*, 179 DPR 231, 240 (2010), citando a *Ortiz v. Panel F.E.I.*, 155 DPR 219, 244 (2001). Nos referimos, pues, a aquellos casos en los que las cuestiones de hechos a ser consideradas requieren del ejercicio de discreción adjudicativa o de la aplicación del conocimiento especializado que las agencias poseen. *Báez Rodríguez v. E.L.A.*, supra, pág. 240.

*A contrario sensu*, la doctrina de jurisdicción primaria exclusiva, también conocida como jurisdicción estatutaria, es de aplicación cuando la propia ley establece que la agencia administrativa será el foro con jurisdicción para examinar la reclamación. *Íd.; SLG Semidey Vázquez v. ASIFAL*, supra, pág. 676. Esta doctrina atiende situaciones en las que no aplica la doctrina de jurisdicción primaria concurrente, debido a que la ley misma aclara que esta última no existe. *Íd.*, pág. 677. Se trata, pues, de un mandato legislativo –y no de una norma de índole jurisprudencial– **a través del cual se establece que el ente administrativo tendrá jurisdicción sobre determinado tipo de asuntos, por lo que en esos casos los tribunales no cuentan con autoridad para atender las reclamaciones en primera instancia.** *Báez Rodríguez v. E.L.A.*, supra, págs. 240-241; *SLG Semidey Vázquez v. ASIFAL*, supra, pág. 677.

De otro lado, a pesar de que la designación de la jurisdicción exclusiva debe ser clara y precisa, hemos reconocido que el legislador no siempre hace uso del término "exclusiva". *Báez Rodríguez v. E.L.A.*, supra, págs. 240-241. Por tanto, al determinar si un estatuto provee o no jurisdicción exclusiva a un foro administrativo, es necesario evaluar si ello ha sido dispuesto expresamente en la ley o si surge de esta por implicación necesaria. *Íd.*, pág. 241. Por otra parte, debe tenerse en cuenta que la jurisdicción exclusiva no soslaya la revisión judicial, sino que la pospone hasta tanto el organismo administrativo emita

su determinación final. *SLG Semidey Vázquez v. ASIFAL*, supra, pág. 677.

Asimismo, hemos aceptado que la jurisdicción primaria del foro administrativo puede ceder ante un planteamiento de violación a derechos constitucionales. Véanse *Santiago v. Superintendente de la Policía*, 112 DPR 205, 207 (1982) (Sentencia); *Pierson Muller I v. Feijoó*, 106 DPR 838, 853-854 (1978) (En Reconsideración). En ese sentido, "la reivindicación de los derechos constitucionales corresponde y puede reclamarse en primera instancia en los tribunales de justicia, sin que tenga jurisdicción original sobre ello el foro administrativo". *Santiago v. Superintendente de la Policía*, supra, pág. 207. No obstante, **"ello no implica que una simple alegación** [**de que se han violado derechos constitucionales**] **excluya el foro administrativo"**. (Énfasis suplido). *First Fed. Savs. v. Asoc. de Condómines*, 114 DPR 426, 438 (1983). Aclaramos que, más allá de una simple alegación, "[e]s preciso […] que se demuestre que la acción administrativa constituye una gestión inútil, inefectiva y que no ofrece un remedio adecuado o que ha de causar un daño irreparable e inminente". *Íd*., págs. 438-439.

### C.

La Ley Núm. 5 de 14 de octubre de 1975, conocida como Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, 3 LPRA ant. sec. 1301 *et seq*. (Ley de Personal) reafirmó el principio de mérito como norma rectora

en la administración de personal y extendió ese principio a todos los sectores del servicio público. Sec. 2.1 de la Ley de Personal, 3 LPRA ant. sec. 1311. Entre los objetivos de esta ley se encontraba el "[l]ograr que la administración pública se ri[giera] por criterios de la mayor uniformidad, equidad, y justicia". Sec. 2.2 de la Ley de Personal, 3 LPRA ant. sec. 1312.

La Ley de Personal estableció la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) como un organismo "enteramente independiente de la Oficina Central de Administración de Personal". Sec. 7.1 de la Ley de Personal, 3 LPRA ant. sec. 1381. La JASAP poseía jurisdicción apelativa para revisar las "acciones o decisiones de la Oficina Central, de los Administradores Individuales, y de las autoridades nominadoras" entre otras circunstancias, cuando un empleado de carrera dentro del Sistema de Personal alegara que tales acciones o decisiones violaron cualquier derecho que le hubiera sido conferido en virtud de las disposiciones de esta, el Reglamento que la implantaba o aquellos reglamentos adoptados por los Administradores Individuales para dar cumplimiento a este Capítulo. Sec. 7.14 de la Ley de Personal, 3 LPRA ant. sec. 1394.[12]

---

[12] En particular, la Sec. 7.14 de la Ley de Personal establecía, en lo pertinente, lo siguiente:

(1) En casos de destitución o suspensión de empleo y sueldo por un empleado de carrera que esté dentro del Sistema de Personal, o cuando alegue que una acción o decisión que le afecta[,] viola cualquier derecho que se le conceda a virtud de las disposiciones de esta ley, del Reglamento que se apruebe

De otro lado, la Ley de Retribución Uniforme, *supra*, fue aprobada en el 1979 en reconocimiento de la importancia de la retribución del empleado público en aras de "'lograr un sistema de administración de personal moderno y balanceado y para facilitar la aplicación del principio de mérito'". *Ortiz Ortiz v. Depto. de Hacienda*, 120 DPR 216, 220, 221 (1980), citando la Exposición de Motivos de la Ley de Retribución Uniforme, 1979 Leyes de Puerto Rico 224, 225. Dicha ley tenía como propósito el establecer, en consonancia con el principio constitucional de igual paga por igual trabajo, "'un sistema de retribución que propici[ara] la uniformidad, la equidad y la justicia en la fijación de los sueldos a todos los empleados del servicio público'" a la vez que creaba mecanismos que propendieran y facilitaran el reclutamiento y retención del personal por medio de la concesión de incentivos adicionales. *Íd*. Véase, además, Exposición de Motivos de la Ley de Retribución Uniforme, *supra*, pág. 226.

No obstante, ambas legislaciones fueron derogadas por la Ley Núm. 184-2004, *supra*,[13] la cual creó la Comisión

_____

para instrumentar este Capítulo, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a este Capítulo. Las acciones que interpongan los empleados y que estén relacionadas con las áreas esenciales al principio de mérito, según señaladas en la sec. 1331 de este Capítulo, serán vistas en primera instancia por la Junta.

. . . . . . . . . .

Sec. 7.14 de la Ley de Personal, 3 LPRA ant. sec. 1394.

[13] La Ley Núm. 184-2004, *supra*, fue derogada por la Ley Núm. 8-2017, conocida como Ley para la Administración y Transformación de los Recursos Humanos, 3 LPRA sec. 1469 *et seq*. No obstante, esta nueva legislación dispone, en lo pertinente, que: "(2) [l]os empleados que a la vigencia

Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) como organismo adjudicativo que sustituyó a la JASAP y estableció un nuevo sistema retributivo. La Ley Núm. 184-2004, *supra*, proveyó a la CASARH jurisdicción apelativa en casos como los siguientes:

> Esta Comisión tendrá jurisdicción sobre las **apelaciones surgidas como consecuencia de las acciones o decisiones de los Administradores Individuales** y los municipios en los casos y por las personas que se especifican a continuación:
>
> 1. **Cuando un empleado dentro del Sistema de Administración de los Recursos Humanos,** no cubiertos por la Ley de Relaciones del Trabajo para Servicio Público, **alegue que una acción o decisión que le afecta viola cualquier derecho que se le conceda en virtud de las disposiciones de esta Ley,** la Ley de Municipios Autónomos, **los reglamentos que se aprueben para instrumentar dichas leyes, o los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a esta Ley.**
>
> .   .   .   .   .   .   .   .
>
> (Énfasis suplido). Art. 13, sección 13.13 de la Ley Núm. 184-2004, 3 LPRA ant. sec. 1468l.

Además, dicha legislación creó un Sistema de Administración de los Recursos Humanos que era administrado por las autoridades nominadoras, comprendía todas las agencias constituidas como Administradores Individuales y tenía como

---

de esta ley estén prestando servicios en agencias que constituyen Administradores Individuales en puestos comprendidos en el servicio de carrera […], conforme a las disposiciones de la Ley 184-2004, según enmendada, o de leyes especiales, conservarán todos los derechos adquiridos, incluyendo los beneficios marginales, conforme a las leyes, normas y reglamentos que les sean aplicables siempre que los mismos no sean incompatibles con las disposiciones de este capítulo y de las secs. 9461 *et seq.* de este título, conocidas como la 'Ley de Cumplimiento con el Plan Fiscal' […]". Art. 6 de la Ley Núm. 8-2017, 3 LPRA sec. 1477a.

objetivo primordial el aplicar, evaluar y proteger el principio de mérito en el servicio público. Art. 5, sección 5.1 de la Ley Núm. 184-2004, 3 LPRA ant. sec. 1461d.

En cuanto al sistema retributivo implantado por la Ley Núm. 184-2004, *supra*, destacamos que -al igual que aquel establecido por la Ley de Retribución Uniforme, *supra*, este reconoció como pilares los principios de equidad y justicia a la luz de la realidad económica de los organismos gubernamentales. Art. 8, sec. 8.1 de la Ley Núm. 184-2004, 3 LPRA ant. sec. 1464. A tales efectos, la Ley Núm. 184-2004, *supra*, estableció normas generales de retribución que servían de guía a todas las agencias gubernamentales bajo esta ley, así como normas específicas, las cuales solo eran aplicables "a los empleados no sindicados, gerenciales o empleados excluidos de las secs. 1451 a 1454a de este título, que laboran en el servicio público". Art. 8, sec. 8.2 y sec. 8.3 de la Ley Núm. 184-2004, 3 LPRA ant. secs. 1464a y 1464b.[14]

Por otra parte, el 26 de julio de 2010 fue aprobado el Plan de Reorganización de la CASP, 3 LPRA Ap. XIII, (Plan de Reorganización Núm. 2-2010). Este Plan de Reorganización creó la CASP con el propósito de fusionar la CASARH[15] y la

---

[14] Para más detalles sobre el sistema de retribución dispuesto por la Ley Núm. 184-2004, *supra*, véase Art. 8 de la Ley Núm. 184-2004, 3 LPRA ant. secs. 1464-1464b.

[15] Este Plan de Reorganización derogó el Art. 13 de la Ley Núm. 184-2004, 3 LPRA ant. secs. 1468-1468p, que establecía la CASARH.

Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).

La CASP es un organismo cuasi-judicial especializado en asuntos obrero-patronales y de principio de mérito en el cual se atienden casos laborales, de administración de recursos humanos y querellas, tanto de los empleados que negocian al amparo de la Ley de Relaciones del Trabajo del Servicio Público, Ley Núm. 45 de 25 de febrero de 1998, 3 LPRA sec. 1451 *et seq.*, como de los empleados públicos cubiertos por la Ley para la Administración de los Recursos Humanos en el Servicio Público, Ley Núm. 184-2004, *supra*. Véase 3 LPRA Ap. XIII, Art. 4.

El Art. 12 del referido Plan de Reorganización dicta que la CASP posee jurisdicción apelativa exclusiva para atender, entre otros, los casos siguientes:

> **La Comisión tendrá jurisdicción exclusiva sobre las apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales** y los municipios **en los casos y por las personas que se enumeran a continuación:**
>
> **(a) Cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por** las secs. 1451 *et seq.* de este título, conocidas como **la 'Ley de Relaciones del Trabajo del Servicio Público, alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004,** las secs. 4001 *et seq.* del Título 21, conocidas como la 'Ley de Municipios Autónomos', **los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable.**
>
> .   .   .   .   .   .   .   .

(Énfasis suplido). *Íd.*, Art. 12.

**D.**

La sentencia declaratoria es un "'mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita'". *Senado de Puerto Rico v. Gobierno de Puerto Rico*, 2019 TSPR 138, 203 DPR ___ (2019), citando a *Alcalde Guayama v. ELA*, 192 DPR 329, 333 (2015). Este recurso extraordinario, cuyo propósito es disipar una incertidumbre jurídica y contribuir a la paz social, puede ser dictado en procesos en los cuales "los hechos alegados demuestran que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, Ed. Lexis Nexis, 2010, pág. 560. Además, provee para que "toda persona cuyos derechos […] fuesen afectados por un estatuto, ordenanza municipal, contrato o franquicia, pued[a] solicitar una determinación sobre cualquier divergencia en la interpretación o validez de [estos], y que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que se deriven de aquéllos". Regla 59.2 de Procedimiento Civil, 32 LPRA Ap. V.

De otro lado, es preciso señalar que, **a pesar de que la sentencia declaratoria puede ser presentada aunque se haya instado o pueda instarse otro remedio**, Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V., **"[c]omo regla general, [este recurso] no est[á] disponible para revisar decisiones administrativas […] ya que se trata de un procedimiento ordinario"**. (Énfasis suplido). J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Ed. Publicaciones JTS, 2011, T. V, pág. 1793. Así, por ejemplo, la sentencia declaratoria no puede ser utilizada cuando el legislador ha desarrollado un procedimiento administrativo específico para atender el asunto en controversia. En ese contexto, el profesor Demetrio Fernández Quiñones ha expresado que:

> **La sentencia declaratoria es improcedente en todo caso en que exista un procedimiento administrativo específico. Dos razones existen para solicitar la desestimación del recurso de sentencia declaratoria en el contexto del procedimiento administrativo. Primero, la falta de jurisdicción porque el legislador ha especificado un procedimiento de forma terminante y exclusivo. Segundo, la posibilidad de que no se hayan agotado los remedios administrativos.** (Énfasis suplido). Fernández Quiñones, *op. cit.*, págs. 747-748. Véase, además, *Asociación de Distribuidores de Televisores y Radios de Puerto Rico v. Administración de Estabilización Económica*, 81 DPR 212 (1959).[16]

---

[16] Allí expresamos que: "[s]olamente cuando es claro que no existe una determinación legislativa del procedimiento apropiado es que se puede pensar con seguridad en tales términos generales como *injunction*, *hábeas corpus*, *mandamus*, etc. Cuando la ley señala los métodos y circunstancias mediante los cuales se someterá la acción administrativa al escrutinio judicial, los tribunales no permitirán el uso de otros medios para obtener el examen judicial". *Asociación de Distribuidores de Televisores y Radios de Puerto Rico v. Administración de Estabilización Económica*, 81 DPR 212, 219-220 (1959).

Expuesto el derecho aplicable a la controversia de autos, procedemos a resolver.

## III

En el presente caso, el Tribunal de Primera Instancia desestimó las Demandas presentadas por los empleados demandantes tras concluir que carecía de jurisdicción sobre la materia para atender las controversias allí plasmadas, por entender que la CASP era el foro con jurisdicción exclusiva para dilucidarlas. En desacuerdo, los empleados demandantes recurrieron ante el Tribunal de Apelaciones, el cual revocó parcialmente la determinación del foro primario. El foro *a quo* razonó que el Tribunal de Primera Instancia carecía de jurisdicción para dilucidar si los empleados demandantes eran acreedores o no de un ajuste retributivo en su carácter individual, por tratarse de una materia sobre la cual la CASP poseía jurisdicción exclusiva. Sin embargo, concluyó que el foro primario sí ostentaba jurisdicción para examinar, mediante el mecanismo de Sentencia Declaratoria, la validez y el alcance del Memorando General Núm. 5-86 y de esa forma dilucidar "si la[s] agencia[s] apelada[s] aplic[aron] o no los ajustes retributivos por aumentos al salario mínimo federal conforme a los principios retributivos que r[egían] en nuestra jurisdicción".[17] El Tribunal de Apelaciones fundamentó dicho proceder en que esta última era **una**

---

[17] Véanse, Apéndice del recurso AC-2016-0110, pág. 1064 y Apéndice del recurso AC-2016-0120, pág. 332.

**controversia de derecho que afectaba a un número significativo de empleados públicos**, por lo que la expedición de una Sentencia Declaratoria podría proveer certeza y finalidad a la misma.

En desacuerdo con la revocación parcial aludida, el Estado plantea que el Tribunal de Primera Instancia no tiene la facultad señalada por el Tribunal de Apelaciones. Afirma que a pesar de que los empleados demandantes presentaron su reclamación ante el foro primario a través del mecanismo de Sentencia Declaratoria, el reclamo de estos es realmente uno de ajustes de escalas salariales y de pago retroactivo de salarios, por lo que la CASP es el organismo administrativo con jurisdicción primaria exclusiva para atenderlo.

*A contrario sensu*, los empleados demandantes sostienen que la materia de los casos consolidados de epígrafe no se encuentra bajo la jurisdicción primaria exclusiva de la CASP. Reiteran que por medio de sus reclamaciones cuestionan la validez del Memorando General Núm. 5-86, asunto que puede ser atendido por el foro judicial a través del mecanismo de Sentencia Declaratoria. Así, arguyen que no nos encontramos ante una situación de jurisdicción primaria exclusiva, pues no existe una disposición expresa en el estatuto habilitador de la CASP que tenga el efecto de privar a los tribunales de toda autoridad para dilucidar este tipo de controversias, sino que se trata de un asunto de jurisdicción concurrente,

en el cual los empleados demandantes tienen derecho a elegir el foro para presentar su reclamación.

Un examen de las alegaciones y documentos presentados por las partes, a la luz de la normativa expuesta, nos lleva a concluir que la controversia relacionada con la validez y alcance del Memorando General Núm. 5-86, la cual está fundamentada en el efecto que tuvo la implantación del mecanismo de ajuste salarial dispuesto en el referido Memorando General sobre las escalas salariales y la retribución recibida por los empleados demandantes, es una sobre la cual la CASP posee jurisdicción apelativa exclusiva. A lo largo de los pleitos consolidados de epígrafe, los empleados demandantes han alegado que al implantar el salario mínimo federal a la luz del método de ajuste salarial dispuesto en el Memorando General Núm. 5-86, las agencias codemandadas dejaron inoperante el método de ajuste salarial establecido por ley y los reglamentos aplicables, lo que tuvo el efecto de que se les pagara un salario menor al que les correspondía.[18] A raíz de ello, solicitan como remedio el pago retroactivo de los salarios que presuntamente les corresponden. Nótese que, por medio de las referidas alegaciones, los empleados demandantes –

---

[18] Los empleados demandantes hacen alusión a la Ley de Retribución Uniforme, *supra*, y su Reglamento. No obstante, al momento de la presentación de sus reclamos, esa ley había sido derogada por la Ley Núm. 184-2004, *supra*, la cual también les reconoció el derecho a que la retribución fuera impuesta de conformidad con los principios de mérito, equidad retributiva e igual paga por igual trabajo.

quienes están cobijados por las disposiciones de la Ley Núm. 184-2004, *supra*- sostienen que las agencias codemandadas, las cuales fungían como Administradores Individuales bajo la Ley Núm. 184-2004, *supra*, llevaron a cabo determinadas acciones que tuvieron el efecto de violar derechos que les fueron reconocidos por la ley y los reglamentos aprobados para implantarla. Es precisamente sobre esos asuntos que el legislador le proveyó a la CASP jurisdicción apelativa exclusiva.

Por consiguiente, de conformidad con el Plan de Reorganización Núm. 2-2010, la CASP es el organismo con jurisdicción exclusiva para atender la controversia relacionada con la validez y el alcance del Memorando General Núm. 5-86, o lo que es lo mismo, el efecto que tuvo la implantación del mecanismo de ajuste salarial dispuesto en el Memorando General Núm. 5-86 sobre los derechos de los empleados demandantes. Recuérdese que, a pesar de que el mecanismo de Sentencia Declaratoria puede ser utilizado aun cuando existen otros remedios, el mismo resulta improcedente cuando -como en este caso- el legislador ha establecido un procedimiento exclusivo para la dilucidación de la controversia en primera instancia. No puede pasarse por alto que, cuando el legislador establece que un foro administrativo tendrá jurisdicción sobre determinado tipo de asuntos, los tribunales no tendrán jurisdicción para atender la reclamación en primera instancia. *Báez Rodríguez v.*

*E.L.A.*, supra, págs. 240-241; *SLG Semidey Vázquez v. ASIFAL*, supra, pág. 677.

Habiendo concluido que la CASP es el foro administrativo con jurisdicción apelativa exclusiva para atender la controversia señalada, examinemos si los empleados demandantes han presentado alegaciones concretas que les permitan eludir el trámite administrativo. A esos efectos, estos han aducido que los casos consolidados de epígrafe envuelven un planteamiento de violación al principio constitucional de igual paga por igual trabajo, el cual les permite acudir directamente al foro judicial. Procedemos a examinar la suficiencia de las alegaciones de los empleados demandantes relacionadas con esta causa de acción, a los únicos efectos de evaluar la jurisdicción del foro judicial.

En el presente caso, los empleados demandantes sostienen que se encuentran similarmente situados con respecto a otros empleados que fungieron como demandantes en pleitos instados en los años 1990, 1991 y 2005 ante el Tribunal de Primera Instancia, en los cuales estos últimos impugnaron la validez del Memorando General Núm. 5-86 por presuntamente tener el efecto de violar disposiciones retributivas establecidas en las leyes estatales aplicables y por ser contrario a los principios de equidad retributiva e igual paga por igual trabajo reconocidos en esas leyes. Arguyen que, en esos casos, el Tribunal de Primera Instancia declaró con lugar las Demandas presentadas y ordenó a las agencias demandadas a

establecer escalas salariales acordes con los referidos principios. Asimismo, esbozan que, según lo ordenado, las agencias demandadas establecieron nuevas escalas salariales, pero estas solo fueron extensivas a los empleados que fungieron como demandantes en los referidos pleitos, lo que resulta ser contrario a lo expresado por este Tribunal en el caso *Santiago Declet v. Departamento de la Familia*, 153 DPR 208 (2001).[19] En lo pertinente, este Tribunal expresó que:

> El efecto de una corrección efectuada en algún aspecto [de un plan de clasificación y retribución] luego de una impugnación se hace extensiva, en los mismos términos, a todos los empleados ubicados en la misma situación que la de aquel que prevaleció en su impugnación. En este sentido, se benefician del cambio, tanto los empleados que impugnan ante los foros apropiados su nueva clasificación o retribución, como aquellos ubicados en similar situación que no han cuestionado su nueva situación laboral bajo el plan implantado. De este modo se reconoce en términos prácticos el Derecho Constitucional de todo trabajador de "recibir igual paga por igual trabajo". *Íd.*, pág. 219.

A primera vista, parecería que los empleados demandantes presentaron alegaciones suficientes para establecer su causa de acción al amparo del principio de igual paga por igual trabajo. No obstante, es de notar que estos no exponen en sus Demandas alegaciones concretas y específicas para colocar a este Tribunal en posición de determinar si, en efecto, se encuentran similarmente situados con relación a los demandantes de los otros pleitos. Tampoco han demostrado que

---

[19] Cabe destacar que en *Santiago Declet v. Departamento de la Familia,* 153 DPR 208 (2001), contrario a los casos ante nos, se siguió el procedimiento administrativo pertinente previo al trámite judicial.

la acción administrativa constituye una gestión inútil, inefectiva, que no ofrece un remedio adecuado o que tendría el efecto de causar un daño irreparable o inminente. Así, dado que los empleados demandantes se limitan a aducir que su reclamo está fundamentado en un derecho constitucional que consiste en impedir que se otorguen salarios distintos a personas clasificadas en la misma escala salarial sin justificación objetiva para la diferencia en tal compensación, las alegaciones presentadas por los empleados demandantes resultan insuficientes para eludir el trámite administrativo. Esto, porque "[n]o es acreedor a una vista en los méritos quien de su faz no aduce hechos terminantes y precisos, justificativos de la opción judicial por el remedio constitucional y de la preterición del cauce administrativo". *First Fed. Savs. v. Asoc. de Condómines*, supra, pág. 438. Si bien es cierto que la reivindicación de los derechos constitucionales corresponde a los tribunales de justicia, hemos indicado que "el mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo". *Íd.*

Por lo tanto, reiteramos que en casos en los que se pretenda eludir el trámite administrativo específicamente establecido por el legislador a base de una alegada violación de derechos constitucionales, será necesario que la parte demuestre que la acción administrativa constituye una gestión inútil, inefectiva y que no ofrece un remedio adecuado o que

tendría el efecto de causar un daño irreparable e inminente. Destacamos que, a diferencia del caso *Colón Rivera et al. v. E.L.A.*, supra, en el cual los demandantes presentaron alegaciones *específicas* sobre discrimen político para eludir el trámite administrativo, en los casos consolidados de epígrafe los empleados demandantes expusieron planteamientos *generales* sobre la supuesta violación al principio de igual paga por igual trabajo. **Los hechos señalados por estos no nos permiten deducir, sin entrar a especular, que ocupan puestos similares a los demandantes en los pleitos de 1990, 1991 y 2005, de forma tal que se pueda concluir que las agencias codemandadas violaron el referido principio al no extender las escalas salariales a aquellos.**

De conformidad con lo expuesto, habida cuenta de que la CASP es el foro con jurisdicción exclusiva para atender las reclamaciones presentadas en los recursos consolidados de autos, y no habiendo presentado los empleados demandantes planteamientos específicos que justificaran la intervención en primera instancia por el foro judicial, el mecanismo de Sentencia Declaratoria resulta improcedente. Por consiguiente, concluimos que el Tribunal de Apelaciones erró al bifurcar las causas de acción acumuladas en las reclamaciones de epígrafe y determinar remitir el asunto sobre la impugnación de la validez del Memorando General Núm. 5-86 ante la atención del foro primario, por carecer este último de jurisdicción sobre la materia para entender

en la controversia planteada. **El mero hecho de que la reclamación contara con un número significativo de demandantes no justificaba prescindir del trámite administrativo exclusivo delineado por el legislador.**

Al emitir esta determinación, no pasamos juicio sobre la procedencia de los reclamos de los empleados demandantes, solo sobre la suficiencia de sus planteamientos a los únicos efectos de determinar la jurisdicción del foro judicial.

**IV**

Por los fundamentos expuestos, revocamos las Sentencias del Tribunal de Apelaciones en cuanto a la determinación de bifurcar las controversias de los casos de epígrafe y ordenar al foro primario dilucidar la controversia sobre la validez del Memorando General Núm. 5-86, y reinstalamos las Sentencias dictadas por el Tribunal de Primera Instancia que desestimaron en su totalidad las reclamaciones de los empleados demandantes.

Se dictará Sentencia de conformidad.

Mildred G. Pabón Charneco<br>
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Francisco Beltrán Cintrón y otros<br><br>    Recurridos<br><br>        v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>    Peticionarios<br><br>Abraham Giménez Jorge L. y otros<br><br>    recurridos<br><br>Estado Libre Asociado de Puerto Rico, Departamento de Transportación y Obras Públicas<br><br>    Peticionarios | AC-2016-110<br><br>Cons. con<br><br>AC-2016-120 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 6 de marzo de 2020.

Por los fundamentos expuestos, revocamos las Sentencias del Tribunal de Apelaciones en cuanto a la determinación de bifurcar las controversias de los casos de epígrafe y ordenar al foro primario dilucidar la controversia sobre la validez del Memorando General Núm. 5-86, y reinstalamos las Sentencias dictadas por el Tribunal de Primera Instancia que desestimaron en su totalidad las reclamaciones de los empleados demandantes.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo.  El Juez Asociado señor Estrella Martínez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo